STATE OF WEST VIRGINIA

*v.*

DENNIS J. BURKE

(No. 9834)

Submitted January 28, 1947. Decided March 25, 1947.

*Guy H. Burnside,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, and *Ralph M. Hiner* and *Eston B. Stephenson,* Assistant Attorneys General, for defendant in error.

HAYMOND, JUDGE:

The defendant, Dennis J. Burke, was convicted upon the trial of an indictment for a misdemeanor in the Criminal Court of Harrison County, and sentenced to be confined in the county jail for a period of one year and to pay a fine of $200.00. The circuit court of that county having refused the petition of the defendant to review that judgment, he prosecutes this writ of error in this Court.

This proceeding grows out of the same transactions which gave rise to the indictment and the trial of the defendant in the case of *State of West Virginia* v. *Tracy Taylor,* 130 W. Va. 74, 42 S. E. 2d 549, the opinion in which is announced contemporaneously with this opinion. Though there are some differences in the testimony in the two cases, consisting of additions and omissions, much of the evidence is identical. A brief statement of the proceedings and a recital of the material facts are, however, deemed proper in the decision of this case.

At the time of the occurrences upon which this prosecution is based, the defendant was the owner and the operator, and Tracy Taylor was the night clerk, of the K & H Hotel located at number 328½ on the north side of West Pike Street, in the City of Clarksburg, in Harrison County. The hotel was conducted in the second and third stories of a three story brick building.

According to the evidence introduced by the State upon the trial of this case, an investigating officer, whose identity was then not known to the defendant, came to the hotel about eleven o'clock on the night of September 4, 1944, accompanied by a girl whom he had met for the first time thirty to forty-five minutes previously in a local lunch room. Upon entering the hotel he met the defendant and

asked for the clerk. Tracy Taylor, the clerk, responded to the call of the defendant, and assigned them a bedroom for use for about thirty minutes. They had no baggage at the time. The clerk, who knew that they were not man and wife, took them to the room. In the hall, just outside room number six, the investigator purchased from the clerk, for twenty-five cents, a prophylactic package. The investigator and the girl remained in the room for approximately thirty minutes, after which they left the hotel. The girl was not summoned as a witness and did not testify at the trial. When the defendant called the clerk at the time the investigator first entered the hotel, the defendant went from the office toward a beer parlor which was opposite the office and on the same floor, and the investigator did not see him again that night.

After his visit to the hotel, the investigator obtained a search warrant, and on the night of September 9, 1944, he and three other police officers searched the premises. The clerk and the defendant were in the hotel when the raid took place between ten and ten-thirty o'clock, and both were placed under arrest. As a result of the search several unmarried couples, undressed or only partly dressed, were discovered in bed in some of the rooms. Loosely arranged registration cards were found at or near the desk at the hotel office. They were not indexed and some of them contained only surnames with no address, or fictitious names. The card for room number ten, showed the registration of Merryman and wife. Some of the cards bore the initials of the defendant.

When the officers arrived the defendant was near the desk, and one of the officers told him that he had a search warrant for the premises and showed him the warrant. As the unmarried couples were brought by the officers from the rooms to the lobby of the hotel near the desk, in the presence of the defendant, they gave their names and stated that they were not married. The only baggage possessed by any of them was a package containing some whiskey, which belonged to one of the men who were arrested. A deputy sheriff testified that the reputation of

the hotel in the community, as a place of prostitution, lewdness and assignation, was bad.

The testimony of the defendant was the only evidence offered in his behalf at the trial. He denied that he had knowingly permitted any person to be in the hotel for the purpose of prostitution, lewdness or assignation. He stated that he was the owner and the proprietor of the hotel and that he had operated it for twenty-two years. He admitted that he had permitted some of the couples, found in the rooms at the time of the raid, to register and that when they had registered he had placed his initials on the cards. He stated that as far as he knew the persons registered were man and wife. On cross-examination, however, he admitted that he permitted the couple found in bed in room number ten to register as Merryman and wife on September 9, 1944, without making any inquiry of them and with knowledge that they had no baggage. He also admitted that he knew that one of the women in one of the rooms was not the wife of the man whom he permitted to register and occupy the room, and that the woman with another man who registered that couple as man and wife was not his wife. He also testified that he permitted the night clerk to register men and women as man and wife until April following the raid in September, 1944. On cross-examination, he was asked if he knew, when he employed the clerk in 1938, that she had been indicted for a felony and had served a year in jail and he answered that he did. To this testimony, however, there was no objection or exception.

After the search of the hotel, the defendant was, on September 19, 1944, arraigned before a justice of the peace of Harrison County and tried on a warrant which charged that he did knowingly and unlawfully keep, maintain and operate a designated place of prostitution in that county. He was convicted and sentenced to confinement in the county jail for a period of six months and to pay a fine of $100.00. He immediately appealed from that judgment to the Criminal Court of Harrison County and entered into

a recognizance for his appearance on the first day of the next regular term of that court.

On March 7, 1945, an indictment, containing two counts, was returned against the defendant by a grand jury then attending the criminal court. On this indictment the defendant was tried, found guilty, and sentenced. On March 12, 1945, and before his trial on the indictment, which occurred on April 13, 1945, a demurrer and a motion of the defendant to quash the warrant were sustained by the court, but no order dismissing the appeal was entered at that time. Final judgment was rendered by the criminal court in the proceeding on the indictment, on April 25, 1945. Afterward, on May 15, 1945, upon the statement of the prosecuting attorney that he would not prosecute the defendant in his pending appeal from the judgment of the justice of the peace, and with the assent of the court, the appeal was dismissed and the defendant was discharged from the warrant.

When the case was called for trial, and while the appeal from the judgment of the justice of the peace on the warrant was pending, the defendant entered his demurrer and motion to quash the indictment. The demurrer and the motion to quash were overruled. The defendant then filed his plea of not guilty and a special plea of former jeopardy based upon his conviction by the justice of the peace on the warrant. The special plea alleged that the defendant in the warrant and the defendant in the indictment were the same person, that the offense charged in each was the same offense, and that the judgment of the justice of the peace remained in full force and effect. It contained no reference to the pendency in the criminal court of the appeal by the defendant from the judgment of the justice of the peace, or the action of the court in sustaining the demurrer of the defendant and his motion to quash the warrant on March 12, 1945. A special replication, filed by the prosecuting attorney, alleged that an appeal from the judgment had been taken by the defendant, and that a *nolle prosequi* was entered to the war-

rant; that the case was dismissed; and that the defendant was discharged from the warrant at the March term, 1945, of the criminal court. The court rejected the special plea, and the case was tried before a jury upon the issue joined upon the plea of not guilty. The jury returned a verdict of guilty as charged in the indictment. On April 25, 1945, the court overruled the motion of the defendant to set aside the verdict and grant him a new trial and entered judgment on the verdict.

The first count of the indictment charged that the defendant, on the —— day of September, 1944, and within one year next prior to the finding of the indictment, in Harrison County, did unlawfuly keep, set up, maintain and operate a designated place, hotel and building in that county for the purpose of prostitution, lewdness and assignation. The second count charged that the defendant, on the —— day of September, 1944, and within one year next prior to the finding of the indictment, in Harrison County, did unlawfully receive, and offer and agree to receive, certain named persons into a designated place, hotel and building in that county for the purpose of prostitution, lewdness and assignation, and did unlawfully permit such persons, and each of them, to remain in such place, hotel and building for that purpose.

The principal grounds urged in support of the numerous assignments of error presented by the defendant are: (1) The indictment fails to state any offense; (2) the defendant has been twice put in jeopardy for the same offense; (3) evidence of the bad reputation of the hotel was inadmissible; (4) the search warrant was invalid and the evidence obtained during the search of the premises was incompetent; (5) evidence offered by the defendant and excluded by the trial court should have been admitted; (6) instructions offered by the State and given by the trial court, should have been refused; (7) certain instructions offered by the defendant and refused by the trial court, should have been given; and (8) the verdict is without sufficient evidence to support it.

All these assignments were included in the assignments of error presented to, and considered and disposed of by, this Court in the case of *State* v. *Tracy Taylor,* 130 W. Va. 74, 42 S. E. 2d 549, this day decided. Except the assignment of error which here presents the question of former jeopardy, the questions raised by similar assignments in the *Taylor* case are identical with those which arise in this proceeding. All these identical questions were fully presented and considered in the *Taylor* case and the several contentions of the defendant in that case were rejected for the reasons set forth in the opinion of this Court in that case. In consequence, no useful purpose would be accomplished in this opinion by repeating the discussion of the issues there involved, by restating the reasons there expressed, or by referring again to the authorities there cited. It is sufficient to state that this Court adheres to the views expressed on those questions and to the disposition made of them in the opinion rendered in that case. The contentions of the defendant, with respect to these questions, are denied.

The contention of the defendant that he has been twice put in jeopardy for the same offense, because of the different situation which arises in this case from that which occurred in the *Taylor* case, calls for discussion. In the *Taylor* case the offense for which the accused was tried and convicted was not the same offense, but an offense different from any offense with which she was charged in the indictment. Here the offense stated in the warrant is the same offense that is charged in the first count of the indictment on which the defendant was convicted. In the *Taylor* case the warrant was plainly insufficient to sustain a conviction. In this case, though the trial court, prior to the trial of the indictment, sustained the demurrer and the motion to quash the warrant, the warrant was in fact sufficient, and the appeal was not dismissed and the defendant was not discharged from the warrant until after he was tried and convicted on the indictment.

Notwithstanding these points of difference, however, the contention of the defendant that he has been twice put

in jeopardy for the same offense must be denied. Though the offense charged in the warrant and the offense charged in the first count of the indictment are the same offense, and though each is based on subsection (a), Section 5, Article 8, Chapter 30, Acts of the Legislature, Regular Session, 1943, the constitutional provision which forbids that any person, in any criminal case, be twice put in jeopardy of life or liberty, West Virginia Constitution, Article III, Section 5, does not apply. By the action of the defendant, in the circumstances which here appear, in obtaining an appeal to the criminal court from the judgment of the justice of the peace, the conviction was vacated and annulled. *Elkins* v. *Michael,* 65 W. Va. 503, 64 S. E. 619; *State* v. *Peleski,* 98 W. Va. 224, 126 S. E. 924. In the *Peleski* case, in which the defendant attempted to plead in abatement, to an indictment in the circuit court, the pendency in that court of his appeal from his conviction by a justice of the peace for the same offense for which he was subsequently indicted, this language is used in the syllabus:

> "Where one charged with an offense of which a justice of the peace, by section 32 of chapter 32-A of the Code, has concurrent jurisdiction with the circuit court, appeals to the circuit court from a judgment of the justice rendered against him, he cannot plead such trial and conviction and the pendency of his appeal in the circuit court, in abatement of a prosecution on an indictment subsequently returned by the grand jury against him for the same offense."

The opinion in that case contains these statements which are peculiarly applicable to the case at bar:

> "But what is the effect of a trial *de novo,* on appeal from the justice's court? The procedure in the circuit court is precisely the same as if the case had originated in that court. Section 230, chapter 50, Code. The trial begins with the appearance of the accused, and ends with the judgment of the court, in either case, whether the defendant has pleaded to the indictment of a grand jury or to the warrant in the justice's court. By

the appeal the judgment of the justice is vacated and annulled. *Elkins* v. *Michael*, 65 W. Va. 503, and cases there cited. In this case each court has the same jurisdiction to try the offense charged. The circuit court, on a trial upon the indictment, can impose no greater penalty than can the justice. The accused can not be prejudiced by a new trial upon the indictment instead of a trial upon the appeal. And, whether the trial in the circuit court upon the indictment results in a conviction or an acquittal, the defendant can not again be tried for the same offense. It might be better practice to dismiss the appeal case, or strike it from the docket, before proceeding to try on the indictment, but the accused can not, as we have said above, be prejudiced by a trial upon the indictment while the appeal is pending."

That case is decisive, and adversely so, of the contention of the defendant. If he can not plead in abatement his former conviction which had been set aside by his appeal, he can not plead it, as the defense of former jeopardy, in bar of the indictment. Whether the appeal of the defendant was dismissed before or after his conviction in the trial upon the indictment is of no consequence. The point of controlling importance is that the former conviction has been set aside and annulled at the instance of the defendant. In law it does not exist, and the defendant was not prejudiced by his subsequent trial for the offense on the indictment. The constitutional safeguard against twice putting a person in jeopardy of life or liberty in a criminal case for the same offense was designed to protect an accused from conduct or action which threatens or imperils his person. When no prejudice of that nature can result to him the constitutional inhibition does not apply. Where a defendant has been convicted and a new trial has been granted him, the prosecution may, with the consent of the court, enter a *nolle prosequi* without prejudice to a new indictment or information. 16 C. J. 250; 22 C. J. S., Criminal Law, Section 256. It is generally conceded that an accused who has been convicted of a crime waives his constitutional protection against being

twice put in jeopardy and may be tried again when a verdict against him is set aside and a new trial is granted on his motion in the trial court or when a conviction is reversed on appeal or error proceedings instituted by him. 15 Am. Jur., Criminal Law, Section 427. Where a new trial is granted on motion of the defendant, and the verdict and the conviction are set aside, the defendant waives his right and is estopped to plead the former conviction as a bar to another trial on the same or a new indictment. 16 C. J. 259. See also *State* v. *Cross*, 44 W. Va. 315, 29 S. E. 527; *State* v. *Conkle*, 16 W. Va. 736; *Younger* v. *State*, 2 W. Va. 579. In the opinion in the *Younger* case, in quoting from the opinion in *Ball* v. *Commonwealth*, 8 Leigh 726, this Court uses these words: "To grant a new trial, on the application of the prisoner, cannot be said to be against the maxim that no one shall be twice put in jeopardy of his life, for the same offense."

The cases of *State* v. *Kiger*, 103 W. Va. 55, 136 S. E. 607, and *Bryan* v. *Commonwealth*, 126 Va. 749, 101 S. E. 316, cited by the defendant, are not in point and their holdings are not applicable to the factual situation which here exists. In each of those cases the judgment upon the former conviction had become final and conclusive. Here, because of the appeal of the defendant, his conviction by the justice of the peace on the warrant was set aside, vacated and annulled and it never acquired finality or conclusiveness. On the contrary, at the instance of the defendant, it was, from and after the appeal was granted, legally inoperative and nonexistent.

As no reversible error appears in the case, the judgments of which the defendant complains are affirmed.

*Judgments affirmed.*